**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARPENTERS INDUSTRIAL COUNCIL, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| and | ) ) |
| SEATTLE AUDUBON SOCIETY, et al., | ) ) ) |
| Plaintiff-Intervenors, | ) ) Civil Action No. 08-1409(EGS) |
| v. | ) ) |
| KEN SALAZAR, Secretary of the the Interior, and U.S. FISH AND WILDLIFE SERVICE, | ) ) ) ) |
| Defendants. | ) ) |

<u>**MEMORANDUM OPINION**</u>

This case arises from a critical habitat designation and recovery plan that defendant U.S. Fish and Wildlife Service (the "FWS") promulgated with respect to the threatened northern spotted owl in 2008. Plaintiffs Carpenters Industrial Council, American Forest Resource Council, Swanson Group, Inc., Rough & Ready Lumber Co., Perpetua Forests Company, and Seneca Jones Timber Company (collectively, the "CIC plaintiffs") contend that the FWS's final rule on the Revised Designation of Critical Habitat for the Northern Spotted Owl, 73 Fed. Reg. 47326 (the "2008 Critical Habitat Designation"), was arbitrary and capricious and rendered in violation of the National

Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. Plaintiff-intervenors Seattle Audubon Society, National Center for Conservation Science and Policy, Oregon Wild, Klamath-Siskiyou Wildlands Center, Wilderness Society, Sierra Club, Center for Biological Diversity, Environmental Protection Information Center, Conservation Northwest, Audubon Society of Portland, National Audubon Society, Cascadia Wildlands Project, Klamath Forest Alliance, Conservation Congress, American Bird Conservancy, Umpqua Watersheds, and Gifford-Pinchot Task Force (collectively, the "Seattle Audubon plaintiff-intervenors"), challenge the federal defendants' 2008 Critical Habitat Designation as well as the 2008 Recovery Plan for the Northern Spotted Owl (the "2008 Recovery Plan") pursuant to the ESA and the APA.

Pending before the Court is the federal defendants' motion for voluntary remand and vacatur. In their motion, the federal defendants confess legal error as to the 2008 Critical Habitat Designation and the 2008 Recovery Plan, and ask the Court to: (i) remand and vacate the 2008 Critical Habitat Designation; (ii) remand the 2008 Recovery Plan; and (iii) order the FWS, after issuance of a revised recovery plan, to evaluate whether revision of the 1992 Critical Habitat Designation is appropriate,

and if so, to complete rulemaking for a new critical habitat designation after issuance of a revised recovery plan. Fed. Defs.' Mot. at 1-2. The Seattle Audubon plaintiff-intervenors consent to the requested relief and ask the Court to enter the proposed order submitted by the federal defendants, *see generally* Seattle Audubon Mot.,[1] while the CIC plaintiffs oppose the requested relief and urge the Court to enter a briefing schedule on cross-motions for summary judgment, *see* CIC Opp'n Br. at 32. Upon consideration of the motions, the response, the replies and sur-replies thereto, the applicable law, the parties' arguments at the January 20, 2010 hearing, and all post-argument briefs, the Court **GRANTS IN PART AND DENIES IN PART** the federal defendants' motion for remand and vacatur. As discussed below, the Court **GRANTS** the federal defendants' request to remand the 2008 Critical Habitat Designation and 2008 Recovery Plan, and **DENIES** the federal defendants' request to vacate the 2008 Critical Habitat Designation.

---

[1] Also pending before the Court is the motion of the Seattle Audubon plaintiff-intervenors for the entry of a proposed order with respect to the federal defendants' motion for voluntary remand and vacatur. *See* Docket No. 43. Specifically, plaintiff-intervenors ask the Court to enter the proposed order filed with the federal defendants' motion. For the reasons discussed herein, the Court declines to enter the proposed order. Accordingly, Seattle Audubon's motion for entry of the proposed order is **DENIED**.

## I.    BACKGROUND

The northern spotted owl is a medium-sized nocturnal bird
that inhabits old-growth forests of western North America,
including parts of northern California, the Pacific Northwest,
and British Columbia.  CIC Am. Compl. ¶ 15; Seattle Audubon
Compl. ¶ 28.  Due to concerns regarding the widespread loss and
modification of the owls' habitat, on June 26, 1990, the FWS
published a final rule listing the northern spotted owl as a
"threatened species" under the ESA.  CIC Am. Compl. ¶ 16 (citing
55 Fed. Reg. 26114); Seattle Audubon Compl. ¶ 34.[2]  The final
listing rule indicated that the northern spotted owl is
threatened throughout its range "'by the loss and adverse
modification of suitable habitat as the result of timber
harvesting and exacerbated by catastrophic events such as fire,
volcanic eruptions, and wind storms.'"  Seattle Audubon Compl.
¶ 31 (quoting 55 Fed. Reg. 26151).  Consequently, on January 15,
1992, the FWS designated 6,887,000 acres in California, Oregon,
and Washington as critical habitat for the northern spotted owl

---

[2]     A threatened species is one that is "likely to become
an endangered species within the foreseeable future throughout
all or a significant portion of its range."  16 U.S.C.
§ 1532(20).  An endangered species is one that is "in danger of
extinction throughout all or a significant portion of its range
. . . ."  *Id.* § 1532(6).

(the "1992 Critical Habitat Designation"). CIC Am. Compl. ¶ 20;

Seattle Audubon Compl. ¶ 37.[3]

While no recovery plan was immediately developed for the

owl, on April 13, 1994, the Secretary of Agriculture and the

Secretary of Interior developed a land management plan for the

owl referred to as the "Northwest Forest Plan." CIC Am. Compl.

¶ 22; Seattle Audubon Compl. ¶¶ 38-39. After determining that

the Northwest Forest Plan provided a sound framework for the

recovery of the owl, the FWS suspended the northern spotted owl

recovery plan preparation process. *See also* Seattle Audubon

Compl. ¶ 39 (explaining that the Northwest Forest Plan did not

satisfy the ESA's criteria for a recovery plan).[4]

---

[3] The ESA defines critical habitat as: (i) the specific areas within the geographical area occupied by the species, at the time it is listed in accordance with the provisions of section 4 of this Act [15 U.S.C. § 1533], on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and (ii) specific areas outside the geographical area occupied by the species at the time it is listed in accordance with the provisions of section 4 of this Act [15 U.S.C. § 1533], upon a determination by the Secretary that such areas are essential for the conservation of the species. 16 U.S.C. § 1532(5)(A).

[4] Once a species is listed as threatened or endangered, the Secretary is directed to develop and implement "recovery plans" for the conservation and survival of the species. 16 U.S.C. § 1533(f)(1). A recovery plan must contain: "(i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species; (ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and (iii) estimates of the time required and the

In May 2006 - nearly sixteen years after the northern
spotted owl was listed as a threatened species - the FWS
assembled a recovery team (the "Recovery Team") which began to
devise a recovery plan for the owl.  Seattle Audubon Compl.
¶ 45.[5]  In September 2006, the Recovery Team forwarded its draft
recovery plan to FWS's Washington, D.C. headquarters for review
by an oversight committee (the "Washington Oversight Committee").
Seattle Audubon Compl. ¶ 47.  One member of the Washington
Oversight Committee was Former Deputy Assistant Secretary Julie
MacDonald ("Deputy Assistant Secretary MacDonald").  Seattle
Audubon Compl. ¶ 47.  The Washington Oversight Committee informed
the Recovery Team that it was concerned that the draft recovery
plan was based on the Northwest Forest Plan and purportedly
advised the team to (i) "put less focus on habitat preservation
and to de-link the recovery plan from the Northwest Forest Plan";
(ii) "include a second alternative that did not rely on fixed
habitat reserves"; and (iii) "minimize the threat to northern
spotted owls from the loss of habitat and emphasize the threat

_____

cost to carry out those measures needed to achieve the plan's
goal and to achieve intermediate steps toward that goal."  *Id.*

[5]     The decision to create a recovery plan was spurred, at
least in part, by a settlement agreement that the FWS entered
into with the CIC plaintiffs in an unrelated lawsuit in 2003,
whereby the FWS agreed to complete rulemaking to revise the
critical habitat designation of the northern spotted owl by July
30, 2008.  *See* CIC Opp'n Br. at 7-8 (explaining that the 2008
Critical Habitat Designation fulfilled the Secretary of the
Interior's obligations under the 2003 settlement agreement).

from barred owls." Seattle Audubon Compl. ¶ 48; *see also* Seattle Audubon Ex. A, Docket No. 45-2, *Investigative Report: The Endangered Species Act and the Conflict between Science and Policy* at 27-28.

Based on the guidance issued by the Washington Oversight Committee, significant revisions were made to the initial draft recovery plan. A revised draft recovery plan was published on April 26, 2007 (the "2007 Draft Recovery Plan"), Seattle Audubon Compl. ¶ 52, and the final recovery plan for the owls was issued on May 13, 2008 (the "2008 Recovery Plan"), Seattle Audubon Compl. ¶ 58.

Following issuance of the 2008 Recovery Plan, on August 13, 2008, the 1992 Critical Habitat Designation was replaced by the 2008 Critical Habitat Designation. Seattle Audubon Compl. ¶ 68. The 2008 Critical Habitat Designation, which was based on both the 2007 Draft Recovery Plan and the final 2008 Recovery Plan, *see* 73 Fed. Reg. 47,328,[6] reduced designated northern spotted owl habitat by approximately 1,574,000 acres, Seattle Audubon Compl. ¶ 68.

---

[6]    *See, e.g.*, 73 Fed. Reg. 47328 ("The [Managed Owl Conservation Areas] network identified in the 2008 Recovery Plan for the Northern Spotted Owl, and the [Managed Owl Conservation Areas] identified for the eastside provinces under Option 1 of the 2007 Draft Recovery Plan for the Northern Spotted Owl, serve as the basis for this revised critical habitat designation.").

Displeased with the 2008 Critical Habitat Designation, on August 13, 2008, the CIC plaintiffs filed the instant action alleging that the 2008 Critical Habitat Designation violates NEPA, ESA, and the APA. The CIC plaintiffs seek declaratory and injunctive relief, and ask the Court for "a limited remand without vacatur [of the 2008 Critical Habitat Designation] to address the specific legal inadequacies presented in their complaint." CIC Opp'n Br. at 8.

On November 14, 2008, fourteen environmental conservation groups sought leave to intervene in the action, which this Court granted on February 18, 2009. Pursuant to the ESA and the APA, the Seattle Audubon plaintiff-intervenors challenge the FWS's issuance of the 2008 Critical Habitat Designation as well as the 2008 Recovery Plan. Plaintiff-intervenors seek declaratory and injunctive relief, and ask the Court to remand the 2008 Critical Habitat Designation and the 2008 Recovery Plan and reinstate the original 1992 Critical Habitat Designation.

On December 22, 2008, the federal defendants notified the Court that the Inspector General of the Department of Interior had issued an Investigative Report entitled "The Endangered Species Act and the Conflict Between Science and Policy" (hereinafter, the "IG's Report"), which examined the influence of Deputy Assistant Secretary MacDonald on twenty ESA decisions and actions, including the recovery plan for the northern spotted

owl. *See* Notice, Docket No. 22. The IG's Report concludes that Deputy Assistant Secretary MacDonald, acting alone or in concert with other Department officials, took actions that "potentially jeopardized" the decisional process for the recovery plan of the owl. *See generally* Seattle Audubon Ex. A, Docket No. 45-2 (Letter from Inspector General Earl E. Devaney to former Secretary of the Interior Dirk A. Kempthorne, dated Dec. 15, 2008, and the attached IG's Report). In their notice, the federal defendants advised the Court that it needed to review the IG's Report and the administrative record for the 2008 Recovery Plan and the 2008 Critical Habitat Designation "to determine whether to continue this litigation, amend their litigation posture, or pursue further administrative action with respect to this final recovery plan." Notice, Docket No. 22 at 2. On March 31, 2009, the federal defendants informed the court that it had concluded its review, and determined that it was appropriate to seek a remand of the 2008 Recovery Plan and 2008 Critical Habitat Designation. *See* Notice, Docket No. 35.

Accordingly, on July 30, 2009, the federal defendants filed their motion for voluntary remand and vacatur. The Seattle Audubon plaintiffs then filed a motion in support of the federal defendants' request for remand and vacatur, while the CIC plaintiffs filed an opposition brief. The federal defendants' motion is now ripe for determination by the Court.

## II. ANALYSIS

In their motion, the federal defendants "confess[] legal error as to the 2008 critical habitat designation and recovery plan," and ask the Court to: (i) remand and vacate the 2008 Critical Habitat Designation, thereby restoring the 1992 Critical Habitat Designation for the owl; (ii) remand the 2008 Recovery Plan and order the FWS to issue a revised recovery plan within nine months of the Court's remand order; and (iii) order the FWS, after issuance of the revised recovery plan, to evaluate whether revision of the 1992 Critical Habitat Designation is appropriate, and if so, to complete rulemaking for a new critical habitat designation with 24 months of the issuance of the recovery plan. Fed. Defs.' Mot. at 1-2. As discussed above, the Seattle Audubon plaintiff-intervenors consent to the requested relief, while the CIC plaintiffs oppose it. The Court will explore the federal defendants' requests in turn.

### A. Voluntary Remand & Vacatur of the 2008 Critical Habitat Designation

#### 1. Voluntary Remand

The first issue to be resolved is whether the Court has the authority to remand the 2008 Critical Habitat Designation to the FWS, and if it does, whether voluntary remand is appropriate. Federal defendants and plaintiff-intervenors argue that the Court may exercise its equitable power to order voluntary remand

10

because the federal defendants admit that "the recovery plan and critical habitat revision for the northern spotted owl are legally erroneous"; in light of this admission, these parties argue that "further proceedings on the claims presented by CIC and Seattle Audubon would simply waste the resources of the Court and the parties." Fed Defs.' Mot. at 7-8; Seattle Audubon Mot. at 6. The CIC plaintiffs, by contrast, contend that the Court lacks the authority to remand and vacate the 2008 Critical Habitat Designation without a final determination of the merits, *see* CIC Opp'n Br. at 10-16, and that even if it does, remand is unwarranted, *see* CIC Opp'n Br. at 17-22. For the reasons discussed below, the Court concludes that it has the authority to remand the 2008 Critical Habitat Designation, and that voluntary remand is, in fact, appropriate in this case.

### i. The Court's Authority to Grant Voluntary Remand

As a threshold matter, courts have long recognized the propriety of voluntarily remanding a challenged agency action without judicial consideration of the merits upon an admission of agency error. Specifically, courts have recognized that voluntary remand is generally appropriate (i) when new evidence becomes available after an agency's original decision was rendered, *see, e.g.*, *Ethyl Corp. v. Browner*, 989 F.2d 522, 523 (D.C. Cir. 1993) (granting an agency's motion for voluntary remand where the agency admitted that new evidence developed that

11

undermined the stated basis for its action), or (ii) where
"intervening events outside of the agency's control" may affect
the validity of an agency's actions. *SKF USA Inc. v. United
States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001). Even in the
absence of new evidence or an intervening event, however, courts
retain the discretion to remand an agency decision when an agency
has raised "substantial and legitimate" concerns in support of
remand. *See Sierra Club v. Antwerp*, 560 F. Supp. 2d 21, 23
(D.D.C. 2008) (citing cases). Granting voluntary remand in such
circumstances is appropriate, as it preserves scarce judicial
resources by allowing agencies "to cure their own mistakes."
*Ethyl Corp.*, 989 F.2d at 524.

Indeed, at least three courts have granted the FWS's
requests for voluntary remand where new evidence or a change in
the law rendered the agency's critical habitat designations
suspect. *See Alliance for the Wild Rockies, Inc. v. Allen*, No.
04-1813, 2009 WL 2015407 (D. Or. July 1, 2009) (granting the
FWS's request for the voluntary remand of its critical habitat
designation for the bull trout in light of new evidence;
explaining that "a remand without expending further judicial
resources to consider the merits is appropriate"); *Natural
Resources Defense Council v. U.S. Dep't of Interior*, 275 F. Supp.
2d 1136, 1141 (C.D. Cal. 2002) (granting the FWS's request for
voluntary remand of its critical habitat designations for the

Coastal California Gnatcatcher and the San Diego Fairy Shrimp in light of a change in case law; explaining that voluntary remand "promotes judicial economy by allowing the relevant agency to reconsider and rectify an erroneous decision without further expenditure of judicial resources"); *see also Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Salazar*, No. 07-876, slip op. at 1, 5 (D.N.M. May 4, 2009) (granting the parties' joint request for voluntary remand of the FWS's critical habitat designations for the Spikedance and the Loach Minnow in light of new evidence; explaining that "federal courts 'commonly' grant agency motions for voluntary remand").

Therefore, consistent with the case law discussed above, the Court concludes that it has the equitable power to grant the federal defendants' request for voluntary remand.[7]

---

[7]    The cases cited by the CIC plaintiffs do not persuade the Court to the contrary. In support of their argument that voluntary remand is impermissible, the CIC plaintiffs rely principally on *Home Builders Association of Northern California v. U.S. Fish & Wildlife Service*, 268 F. Supp. 2d 1197(E.D. Cal. 2003) and *National Parks Conservation Association v. Salazar*, No. 09-115, 2009 WL 2497393 (D.D.C. Aug. 12, 2009). While both the *Home Builders* court and the *National Parks* court refused to grant agency requests for vacatur and remand, the Court finds these cases distinguishable. First, neither case involved later-acquired information that raised substantial and legitimate concerns regarding the agency's decision. *See Nat'l Parks Conservation Ass'n*, 2009 WL 2497393, at *2 (explaining that remand and vacatur was inappropriate because "the Federal defendants point to no new evidence"); *Home Builders Assoc.*, 268 F. Supp. 2d at 1205 ("'[T]his is not a case in which later-acquired information has caused the [FWS] to rethink its decision. Rather, the [FWS]' only stated reason for seeking this remand is the [FWS]' own conclusion that its decision does not

## ii. The Appropriateness of Voluntary Remand

Having determined that it has the authority to grant voluntary remand, the Court must now determine whether the FWS's request is warranted. The federal defendants and the Seattle Audubon plaintiff-intervenors argue that voluntary remand is appropriate in light of the IG's Report, which found that the decisional process for the recovery plan for the northern spotted owl was "potentially jeopardized" by the actions of Deputy Assistant Secretary MacDonald. The federal defendants explain that "[r]econsideration here would allow the Service to remove

---

comply with a later-issued decision by the Tenth Circuit. . . . [T]he Court finds that this assumption is faulty, for the obvious reason that this court is not within the Tenth Circuit.'" (quoting Mem. Op. & Order dated July 2, 2002)). In this case, by contrast, the federal defendants acquired new information — the IG's Report — which found that the FWS's recovery plan and critical habitat designation for the owl were "potentially jeopardized" by the actions of Deputy Assistant Secretary MacDonald. Second, neither court analyzed its authority to remand the rule without granting the agency's request for vacatur. *See Nat'l Parks Conservation Ass'n*, 2009 WL 2497393, at *2 (emphasizing that the federal defendants "ask the Court not only to remand the case, but to vacate the [agency's rule]"); *Home Builders Assoc.*, No. 01-5722, slip op. at 13 (E.D. Cal. July 2, 2002) (finding that "the court lack[ed] authority to *vacate* the existing critical habitat rule absent a decision on the merits" (emphasis added)). *But see Home Builders Assoc.*, No. 01-5722, slip op. at 3 (E.D. Cal. Nov. 6, 2002) (summarily concluding, without analysis, that it lacked authority to grant the FWS's request for voluntary remand). While these cases provide compelling authority regarding the impropriety of judicial vacatur without a determination of the merits, they do not persuade the Court that it lacks the authority to grant a request for voluntary remand given the extraordinary facts of this case.

any question of potential taint from Ms. MacDonald's interference and ensure that the owl's survival and recovery are supported by scientifically valid measures." Fed. Defs.' Reply Br. at 9. The CIC plaintiffs reject this contention, arguing that "[t]he Court must independently determine whether legal error occurred, and may not simply accept confession of error by the government," and that, in any event, "[t]he record does not establish any legal error that permits remanding the 2008 critical habitat rule to the FWS." CIC Opp'n Br. at 17, 18. Finding the federal defendants' request for voluntary remand consistent with the case law discussed above, the Court will explore the CIC plaintiffs' objections in turn.

With regards to the CIC plaintiffs' first objection, *see* CIC Opp'n Br. at 17-18, the Court is not persuaded that it must independently determine whether legal error occurred in order to grant a request for voluntary remand. While it is undoubtedly true that "[a] court is 'not obligated to accept the government's confession of error, particularly when there is reason to doubt whether the government's position is correct,'" CIC Opp'n Br. at 17, the CIC plaintiffs' contention that the Court *must* conduct an independent inquiry to determine that wrongdoing occurred in order to remand an agency decision for reconsideration is unpersuasive. *See, e.g.*, *Sierra Club*, 560 F. Supp. 2d at 24-25 (remanding to allow the government agency to address its

"potential mistake"); *cf. Ethyl Corp.*, 989 F.2d at 524

(discussing "the tradition of allowing agencies to reconsider

their actions where events pending appeal *draw their decisions in*

*question*" (emphasis added)).

Moreover, the Court also disagrees with the CIC plaintiffs'

assertion that the record lacks evidentiary support for the

federal defendants' confession of legal error.  Indeed, to the

contrary, the Court finds that the federal defendants submitted

compelling evidence in support of their claim of legal error and

request for remand: the IG's Report, which was completed before

the change in administrations.  *See* Fed. Defs.' Reply Br. at 8-

12.  Given the current posture of this case, the Court finds no

reason to question the Inspector General's determination that

Deputy Assistant Secretary MacDonald's "zeal to advance her

agenda . . . [and] heavy-handedness . . . potentially

jeopardized" the FWS's 2008 rulemaking as to the northern spotted

owl.  *See* Seattle Audubon Ex. A, Docket No. 45-2 (Letter from

Inspector General Earl E. Devaney to former Secretary of the

Interior Dirk A. Kempthorne, dated Dec. 15, 2008).[8]

---

[8]     While the CIC plaintiffs warn that "[t]he court must be
especially vigilant not to allow the 'pretext of correction,' to
mask the desire of a new administration . . . to reopen a closed
proceeding in order to substitute its own policies for those of
its predecessors," CIC Opp'n Br. at 17-18, the Court finds this
argument unpersuasive in light of the fact that the *prior
administration's* investigation revealed that Deputy Assistant
Secretary MacDonald had potentially jeopardized the northern
spotted owls' recovery plan.

Therefore, in view of the federal defendants' later-acquired information regarding the actions of Deputy Assistant Secretary MacDonald, which raise "substantial and legitimate concerns" about the rule-making process for the northern spotted owl, the Court concludes that the FWS's request for voluntary remand is well justified. *See also, e.g.*, *Alliance for the Wild Rockies, Inc.*, 2009 WL 2015407, at *2 (granting the FWS's request for the voluntary remand of a critical habitat designation in light of the IG's Report on Deputy Assistant Secretary MacDonald); *Coal. of Arizona/New Mexico Counties*, No. 07-876, slip op. at 5 (same). Voluntary remand will also preserve this Court's scarce judicial resources by providing the federal defendants' the opportunity to "cure their own mistakes." *Ethyl Corp.*, 989 F.2d at 524; *see, e.g.*, *Nat'l Res. Def. Council*, 275 F. Supp. 2d at 1141 ("Voluntary remand also promotes judicial economy by allowing the relevant agency to reconsider and rectify an erroneous decision without further expenditure of judicial resources."); *Sierra Club*, 560 F. Supp. 2d at 24-25 ("Remand in this case will serve the interest of allowing the [government] to cure its own potential mistake rather than needlessly wasting the Court's and the parties' resources."). Accordingly, the federal defendants' request for voluntary remand is hereby **GRANTED** consistent with the terms set forth herein. Upon submission of a joint timetable to the Court regarding the length of remand, *see infra* Section

II.C, and the Court's approval thereof, the 2008 Critical Habitat Designation shall be remanded to the FWS for further consideration and evaluation.

### 2. Vacatur

Having concluded that the 2008 Critical Habitat Designation should be remanded for reconsideration, the Court must now determine whether it has the authority to vacate the 2008 Critical Habitat Designation, thereby reinstating the preceding 1992 Critical Habitat Designation for the owl, and if so, whether vacatur is appropriate.  The federal defendants argue that in light of their confession of "legal error" the 2008 Critical Habitat Designation should be vacated, explaining that "'[t]he usual remedy for a procedural violation of the APA is to set the regulation aside.'"  Fed. Defs.' Mot. at 10 (quoting *Endangered Species Comm. of the Building Ass'n v. Babbitt*, 852 F. Supp. 32, 41 (D.D.C. 1994)).  The federal defendants and Seattle Audubon plaintiff-intervenors also argue that vacatur is consistent with the purposes of the ESA, as it would permit the prior, more expansive 1992 Critical Habitat Designation to be reinstated for the owl.  *See, e.g.*, Fed. Defs.' Mot. at 11-12.  The CIC plaintiffs counter that granting vacatur based solely upon defendants' confession of error would allow the federal defendants to circumvent the APA, by effectively authorizing the repeal of an agency rule without public notice and comment or

judicial consideration of the merits. CIC Opp'n Br. at 14-15. The CIC plaintiffs also argue, among other things, that vacatur of the 2008 Critical Habitat Designation would be inequitable as it would rescind the settlement agreement that the Interior Department entered into with the CIC plaintiffs in 2003. *See* CIC Opp'n Br. at 24-26; *see also infra* n.5. As explained below, the Court concludes that it lacks the authority to vacate the 2008 Critical Habitat Designation at this stage of the litigation.

### i. The Court's Authority to Vacate the 2008 Critical Habitat Designation Without a Determination of the Merits

The federal defendants and the Seattle Audubon plaintiff-intervenors argue that the Court has the authority to vacate the 2008 Critical Habitat Designation without making a determination of the merits as a result of the federal defendants' confession of legal error. *See* Fed. Defs.' Mot. at 11-13; Fed. Defs.' Reply Br. at 18-23; *see also* Seattle Audubon Post-Argument Br. at 4 ("Here, by itself, the federal defendants' confession of legal error is sufficient to justify vacating the 2008 critical habitat revision under 5 U.S.C. § 706(2)."). Although two courts have agreed with this position and exercised their equitable power to summarily vacate critical habitat designations, *see Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Salazar*, No. 07-876, slip op. at 5 (D.N.M. May 4, 2009); *Natural Res. Def. Council*, 275 F. Supp. 2d at 1143, this Court is not persuaded

19

that it has the authority to order vacatur of the 2008 Critical Habitat Designation without an independent determination that the FWS's action was not in accordance with the law. *See generally* 5 U.S.C. § 706(2) (directing a reviewing court to hold unlawful and set aside agency action, findings, and conclusions that *it finds* to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). To summarily grant the federal defendants' request for vacatur "would allow the Federal defendants to do what they cannot do under the APA, repeal a rule without public notice and comment, without judicial consideration of the merits." *Nat'l Parks Conservation Ass'n*, 2009 WL 2497393, at *3. The Court, therefore, concludes that it lacks the authority to grant the federal defendants' request for vacatur without a determination of the merits.[9]

------

[9]    As an alternative argument, the federal defendants and the Seattle Audubon plaintiff-intervenors ask the Court to construe the federal defendants' proposed order as a consent decree, arguing that vacatur of a critical habitat designation without a determination of the merits is appropriate pursuant to a consent decree. *See* Seattle Audubon Reply Br. at 14; *see also* Seattle Audubon's Post-Argument Br. at 3 (explaining that "without even reaching the merits, this Court has the power to approve settlement agreements that are fair, adequate, reasonable, and appropriate if there has been valid consent by the concerned parties"(citing *Citizens for a Better Env't v. Gorsuch*, 718 F. 2d 1117, 1125-26 (D.C. Cir. 1983))). While the Court recognizes its authority to vacate a critical habitat designation without a determination of the merits through the entry of a proposed consent decree, *see, e.g.*, *Home Builders Ass'ns of N. California v. Norton*, 293 F. Supp. 2d 1, 4 (D.D.C. 2002) (vacating and remanding critical habitat designation pursuant to a consent decree); *Nat'l Ass'n of HomeBuilders v. Evans*, No. 00-2799, 2002 WL 1205743, at *2 (D.D.C. Apr. 30, 2002)

The Court also declines the invitation of the Seattle
Audubon plaintiff-intervenors to proceed with partial summary
judgment briefing on the issue of whether the improper influence
of Deputy Assistant Secretary MacDonald caused the 2008 Critical
Habitat Designation to depart from the best available science.
*See* Seattle Audubon Post-Argument Br. at 5.[10]  While the Court is

_____

(same), the Court is unpersuaded that entry of a consent decree
is appropriate in this case as the CIC plaintiffs have not agreed
to settle their claims with the federal defendants.  *See* CIC
Surreply at 2 ("Defendant's motion for remand and vacatur does
not seek approval of a consent decree – it is a contested motion
to dispose of CIC's claims over its objection.").  Although the
federal defendants and plaintiff-intervenors cite cases in which
courts have entered consent decrees over the objections of
defendant-intervenors and amici, *see Home Builders Ass'ns*, 293 F.
Supp. 2d at 2 (entering a consent decree over the objections of
defendant-intervenors); *Nat'l Ass'n of Home Builders*, 2002 WL
1205743, at * 1-2 (entering a consent decree over the objections
of amici), the parties have provided no case law in which a court
has entered a consent decree vacating a critical habitat
designation over the objection of the original plaintiff.
Moreover, in light of the facts of this case, the Court concludes
that such an outcome would be inequitable.

[10]   Although the federal defendants and the Seattle Audubon
plaintiff-intervenors assert that the Court could decide the
issue on the papers already before it, the Court finds this
argument unpersuasive in light of the comprehensive review that
the federal defendants had to undertake to determine whether to
seek voluntary remand.  *See* Notice, Docket No. 22 at 2 ("As a
result of [the IG's Report], Federal Defendants will be reviewing
the decision and administrative record for this action to
determine whether to continue this litigation, amend their
litigation position, or pursue further administrative action with
respect to this final recovery plan."); Notice, Docket No. 35 at
2 ("[T]he Service and Department of the Interior undertook a
comprehensive review of the [IG's Report] and the Service's files
for the recovery plan and revised critical habitat designation

sensitive to the plaintiff-intervenors' strong opposition to remand without vacatur, *see* Seattle Audubon's Post-Argument Br. at 3, the Court concludes that such a piecemeal approach to the resolution of this litigation is not in the interest of justice.

The Court, therefore, concludes that remand of the 2008 Critical Habitat Designation without vacatur is the most equitable outcome, as it will preserve this Court's scarce judicial resources by allowing the FWS to cure its own purported "legal error," and allow the agency to focus its efforts on issuing a revised recovery plan and critical habitat designation for the owl. *See* Fed. Defs.' Post-Argument Reply Br. at 4 n.3 (explaining that requiring the FWS to file an administrative record in this case "would have the disadvantage of delaying resolution of this case and agency reconsideration of the owl's critical habitat needs" because "agency personnel now working on the habitat reserve system for any revised recovery plan would have to delay that work and be tasked with preparation of the record"). Accordingly, the federal defendants' request for vacatur of the 2008 Critical Habitat Designation is **DENIED**.

---

and briefed the appropriate decision-makers. The government has concluded its review and has decided that it is appropriate to seek a remand of the recovery plan and revised critical habitat designation.").

**B.    Remand of the 2008 Recovery Plan**

Next, the federal defendants and the Seattle Audubon plaintiff-intervenors ask the Court to remand the 2008 Recovery Plan to the agency and to order the FWS to issue a revised plan within nine months of the Court's remand order.[11]  Although the CIC plaintiffs do not challenge the lawfulness of the 2008 Recovery Plan, they nevertheless object to the federal defendants' request for remand arguing that the Court lacks jurisdiction to remand a recovery plan.  Substantially for the reasons stated in the federal defendants' post-argument reply brief, the Court disagrees.  *See* Fed. Defs.' Post-Argument Reply Br. at 2 (explaining that the APA's final agency action requirement is not jurisdictional in this Circuit (citing *Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006)))); *see also, e.g.*, *Defenders of Wildlife v. Babbitt*, 130 F. Supp. 2d 121, 131-135 (D.D.C. 2001) (remanding the recovery plan for the Sonoran pronghorn); *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105-16 (D.D.C. 1995) (remanding the recovery plan for the grizzly bear).

---

[11]    The federal defendants do not move the Court to vacate the final recovery plan pending its revision on remand.  *See* Fed. Defs.' Mot. at 12-13; *see also* Fed. Defs.' Reply Br. at 2 ("Federal Defendants have sought remand without vacatur of the recovery plan principally because there is no prior recovery plan to reinstate . . . .").

Therefore, in light of the fact that both the federal defendants and the Seattle Audubon plaintiff-intervenors consent to the voluntary remand of the 2008 Recovery Plan, and given the interconnectedness of the 2008 Critical Habitat Designation and the 2008 Recovery Plan, *see* Fed. Defs.' Post-Argument Reply Br. at 2 (explaining that the "recovery plan and critical habitat rule are intimately intertwined"), the Court concludes that remand of the 2008 Recovery Plan as part of the agency's reconsideration of the 2008 Critical Habitat Designation is appropriate.  *See* Fed. Defs.' Post-Argument Reply Br. at 2-3. Accordingly, the 2008 Recovery Plan is hereby **REMANDED** to the FWS for the issuance of a revised recovery plan within nine months of this Order.  The FWS is directed to file status reports with this Court every 90 days apprising the Court of its progress in developing the revised recovery plan.

**C. Rulemaking for a New Critical Habitat Designation**

Finally, the federal defendants ask the Court to order the FWS, after issuance of the revised recovery plan, to evaluate whether revision of the 1992 Critical Habitat Designation is appropriate, and if so, to complete rulemaking for a new critical habitat designation with 24 months of the issuance of the recovery plan.  The Court finds this request – which was premised

upon vacatur of the 2008 Critical Habitat Designation – moot in light of the Court's ruling on the issue of vacatur.

However, in view of the federal defendants' confession of legal error as to the 2008 Critical Habitat Designation, the Court is sensitive to the need for new rulemaking for the owl to be undertaken as expeditiously as possible. Accordingly, by no later than September 30, 2010, the parties are directed to submit a joint proposed timetable to the Court addressing the length of time within which rulemaking for a new critical habitat designation for the northern spotted owl shall be completed; in the event that the parties are unable to reach a joint recommendation, each party shall submit an individual recommendation by that time. The Court will withhold issuance of its Order remanding the 2008 Critical Habitat Designation to the FWS pending resolution of this issue.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the federal defendants' motion for remand and vacatur. Pursuant to the Order accompanying this Memorandum Opinion, the 2008 Recovery Plan shall be remanded forthwith for the issuance of a revised recovery plan within nine months of this Order. The Order remanding the 2008 Critical Habitat Designation, however, shall be withheld pending resolution of the timetable for the proposed rulemaking. Finally, the federal

defendants' request to vacate the 2008 Critical Habitat

Designation is **DENIED**.  The 2008 Critical Habitat Designation

shall remain in force during the rulemaking period.

**SIGNED:      Emmet G. Sullivan**
**United States District Court Judge**
**September 1, 2010**